IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 17-391-1 |
| | : | |
| VAUGHN SPENCER | : | |

## ORDER

AND NOW, this 15th day of August, 2018, upon consideration of Defendant Vaughn Spencer's Motions to Dismiss Count One of the Indictment as Duplicitous and to Dismiss Counts Two Through Nine of the Indictment, and the Government's response thereto, and following a March 27, 2018, oral argument on the Motions, it is ORDERED the Motions (Documents 54 and 55) are DENIED without prejudice to Spencer's right to raise these issues at trial.[1]

---

[1] On July 25, 2017, Defendant Vaughn Spencer, the former mayor of the City of Reading, was charged by indictment with corruption-related offenses arising out of several bribery schemes, through which he allegedly sought to maximize financial contributions to his 2015 mayoral re-election campaign. Spencer is charged with one count of conspiracy, in violation of 18 U.S.C. § 371 (Count One); eight counts of federal program bribery-soliciting, in violation of 18 U.S.C. § 666(a)(1)(B) (Counts Two through Nine); one count of federal program bribery-offering, in violation of 18 U.S.C. § 666(a)(2) (Count Twelve), and one count of honest services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346 (Count Fourteen). Spencer moves to dismiss Count One as duplicitous, and Counts Two through Nine on the basis that they fail to allege an explicit quid pro quo and an official act, requirements he contends are necessary for a federal program bribery charge.

     An indictment must be a "plain, concise, and definite written statement of the essential facts charged." *United States v. Willis*, 844 F.3d 155, 161 (3d Cir. 2016) (quoting Fed. R. Crim. P. 7(c)). Federal Rule of Criminal Procedure 12(b) permits a defendant to move to dismiss an indictment based on a defect therein, including duplicity and failure to state an offense. *See* Fed. R. Crim. P. 12(b)(3). However, "[i]t is well-established that an indictment returned by a legally constituted and unbiased grand jury, . . . *if valid on its face* is enough to call for trial of the charge on the merits." *United States v. Huet*, 665 F.3d 588, 594-95 (3d Cir. 2012) (emphasis in original) (citation omitted). An indictment is facially sufficient if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *Willis*, 844 F.3d

at 161 (citation omitted). "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense." *Id.* at 161-62 (citation omitted). As such, a court should uphold an indictment "unless it is so defective that it does not, by any reasonable construction, charge an offense." *Id.* at 162. (citation omitted). In reviewing a motion to dismiss, a court must accept "as true the factual allegations set forth in the indictment." *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990).

Spencer argues Count One should be dismissed because the Government improperly charged three conspiracies in a single count by "combin[ing] three separate and unrelated schemes, with different participants, different objectives, different manner and means and different overt acts." Mem. in Supp. of Mot. to Dismiss Count One 2. While the Government characterizes the three schemes as two involving pay-to-play arrangements with engineering firms and one involving co-defendant Rebecca Acosta and the repeal of a City campaign finance ordinance, Spencer characterizes the three schemes as follows: (1) a pay-to-play scheme in which Spencer allegedly solicited campaign contributions from two engineering firms in exchange for the award of City engineering contracts; (2) a bribery scheme in which Spencer, through an operative, allegedly offered a bribe to Acosta, in exchange for her husband's efforts to increase or repeal a City ordinance limiting campaign contributions to any person running for City office; and (3) another bribery scheme in which Spencer's operative allegedly offered a bribe to Acosta, who was a member of the Reading School Board of Directors, in exchange for confidential information that could be provided to an energy company to give the company an unfair advantage in the school's contract bidding process. Spencer argues that because he had no knowledge of Acosta's arrangement to trade confidential information with his operative, he cannot be a part of a conspiracy involving this arrangement. He thus asserts its inclusion in the count is duplicitous. The Court disagrees.

To establish the offense of conspiracy pursuant to 18 U.S.C. § 371, the Government must prove "(1) the existence of an agreement to achieve an unlawful objective; (2) the defendant's knowing and voluntary participation in the conspiracy; and (3) the commission of an overt act in furtherance of the conspiracy." *United States v. Rigas*, 605 F.3d 194, 206 (3d Cir. 2010). Although the essence of a conspiracy is an agreement, the "[G]overnment need only prove that the defendant agreed with at least one of the persons named in the indictment that they or one of them would perform an unlawful act." *United States v. Kelly*, 892 F.2d 255, 258-59 (3d Cir. 1989). In determining whether a series of events constitutes a single conspiracy or separate conspiracies, a court considers (1) "whether there was a common goal among the conspirators"; (2) "the nature of the scheme to determine whether the agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators"; and (3) "the extent to which the participants overlap in the various dealings." *Id.* at 259. Members of a single conspiracy must be aware of the scheme and the existence of other members, and their activities must be interdependent or mutually supportive. *See United States v. Kemp*, 500 F.3d 257, 288-89 (3d Cir. 2007). "[T]he absence of one [*Kelly*] factor, [however,] does not necessarily defeat an inference of the existence of a single conspiracy." *United States v. Padilla*, 982 F.2d 110, 115 (3d Cir. 1992).

As an initial matter, the Court notes that "[t]he issue of whether a single conspiracy or multiple conspiracies exist is a fact question to be decided by the jury." *United States v. Freeman*, 763 F. 3d 322, 343 (3d Cir. 2014). In any event, the conspiracy count satisfies the *Kelly* test, demonstrating a single conspiracy has been alleged. With respect to the first factor,

the Indictment sufficiently alleges a common goal between Spencer and his co-conspirators to maximize campaign contributions to Spencer's 2015 mayoral re-election campaign by unlawfully leveraging his office—i.e., seeking to engage in pay-to-play arrangements with engineering firms that desire City contracts and alter campaign finance limitations. Spencer's contention that the conspiracy count must be dismissed because "there is no allegation[] that [he] kn[e]w about, agreed to, or engaged in any conduct with respect to the alleged scheme [involving Rebecca Acosta] surreptitiously providing information relating to the award of a contract by the Reading School District," Mem. in Supp. of Mot. to Dismiss Count One 3, is misguided as "[k]nowledge of all the particular aspects, goals, and participants of a conspiracy [] is not necessary" for one's involvement in the conspiracy. *See United States v. Adams*, 759 F.2d 1099, 1110 (3d Cir. 1985). In addition, Spencer's concern that the jury could convict him without the required unanimity with evidence to support only one of the schemes rather than all of them confuses overt acts within and in furtherance of the conspiracy with the conspiracy, or agreement, itself. *Kelly* requires that each conspirator agree to the achievement of an overall goal, not that each co-conspirator know, much less participate in, each act taken to effectuate that overall goal. Spencer's ignorance of the arrangement between his operative and Acosta regarding the exchange of the school's confidential information therefore does not detract from the goal he shared with his co-conspirators. To the extent that Spencer insinuates the Government improperly "manufactured" a connection between him and Acosta, *see* Mem. in Supp. of Mot. to Dismiss Count One 4-5, this argument lacks support, and the Court fails to see its bearing on his duplicity argument.

With respect to the second factor, the Indictment also sufficiently alleges the conspiracy was dependent on the continuous cooperation of the conspirators, as it alleges Spencer and his co-conspirators knew that to win re-election, Spencer needed to replenish and maintain a healthy campaign contribution base through various pay-to-play schemes, while removing any obstacle to these efforts by attempting to engineer the repeal of campaign contribution limits in the City of Reading. As to the third factor, the schemes overlap in time, as the two engineering schemes allegedly took place between 2012 and 2015, and the repeal scheme, which includes Acosta providing Spencer's operative with confidential information, predominantly took place in March and April 2015. The Indictment also alleges a sufficient degree of participant overlap as Spencer and one of his operatives are alleged to have been involved in all the schemes. Therefore, dismissing Count One would be premature at this time.

Spencer next argues Counts Two through Nine should be dismissed because the Indictment fails to allege an explicit quid pro quo or an official act, both of which Spencer contends are essential elements of federal program bribery under *McCormick v. United States*, 500 U.S. 257 (1991), and *McDonnell v. United States*, 136 S. Ct. 2355 (2016).

As an initial matter, under Third Circuit precedent, it is not clear whether a quid pro quo is an essential element of federal program bribery. *See Willis*, 844 F.3d at 164 (declining to decide whether the government must allege and prove a quid pro quo to establish a federal program bribery offense). Assuming a quid pro quo is required here, this element is sufficiently alleged.

A "quid pro quo" is "a specific intent to give or receive something of value in exchange for an official act." *Id*. at 161 (quoting *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404-05 (1999)). The Supreme Court in *McCormick* held that when a prosecution for Hobbs Act extortion under color of official right is based on an official's receipt of campaign

contributions, the Government must prove an "explicit quid pro quo." 500 U.S. at 273. The Court, however, did not elaborate on the meaning of "explicit" in this context. *See United States v. Ring*, 706 F.3d 460, 466 (D.C. Cir. 2013) (noting the "*McCormick* Court failed to clarify what it meant by 'explicit,' and subsequent courts have struggled to pin down the definition of an explicit quid pro quo in various contexts").

Other Circuit Courts have found the "explicit" quid pro quo requirement "is satisfied by something short of a formalized and thoroughly articulated contractual arrangement (*i.e.*, merely knowing the payment was made in return for official acts is enough)." *United States v. Blandford*, 33 F.3d 685, 696 (6th Cir. 1994); *see United States v. Siegelman*, 640 F.3d 1159, 1171 (11th Cir. 2011) (noting that explicit "does not mean *express*"); *United States v. Carpenter*, 961 F.2d 824, 827 (9th Cir. 1992) (finding *McCormick*'s explicitness requirement does not necessitate a specific statement that the defendant will exchange official action for a contribution, but rather "requires . . . the quid pro quo be clear and unambiguous, leaving no uncertainty about the terms of the bargain"). Consistent with these authorities, in *United States v. Edwin Pawlowski*, No. 17-390 (E.D. Pa. filed July 25, 2017), this Court explained the explicit quid quo requirement to the jury as follows: "An explicit quid pro quo is satisfied by something short of a formalized and thoroughly articulated contractual arrangement. The explicitness requirement does not require an official's specific statement that he will exchange official action for a contribution, but rather requires that the quid pro quo be clear and unambiguous, leaving no uncertainty about the terms of the bargain." Trial Tr. 49, Feb. 28, 2018. While the Court acknowledges the Third Circuit has characterized *McCormick* as requiring an "express quid pro quo," it has not squarely addressed the issue in the campaign contribution context. *See, e.g.*, *United States v. Antico*, 275 F.3d 245, 260 (3d Cir. 2001) (distinguishing the Hobbs Act quid pro quo requirement in the non-campaign contribution context before the court from the "express quid pro quo requirement" applied in campaign contribution cases).

As to the official act requirement, in *McDonnell*, the Supreme Court clarified that an "official act" under the federal bribery statute, 18 U.S.C. § 201, means making a decision or taking action, or agreeing to do either, on a "question, matter, cause, suit, proceeding or controversy" that involves a "formal exercise of governmental power." 136 S. Ct. at 2371-72. The question or matter must be something "specific and focused" that is "pending or may by law be brought before a public official." *Id*. at 2372 (internal quotation marks omitted). "Setting up a meeting, talking to another official, or organizing an event (or agreeing to do so)—without more—does not fit that definition of 'official act.'" *Id.*

The bribery counts against Spencer sufficiently allege both an explicit quid pro quo and an official act by Spencer. Each count charges that Spencer accepted a specific campaign contribution from engineering firms or their agents in exchange for official acts that concerned the award of City contracts, and incorporates Overt Acts 1-25—which describe Spencer's alleged steering of contracts to the firms in exchange for campaign contributions between January 5, 2012, to July 2, 2015. *See* Indict., Counts Two-Nine. Because the Indictment charges that Spencer accepted campaign contributions from engineering firms and their agents in exchange for using his official position to steer City contracts to those firms, it adequately alleges a quid pro quo at this stage in the proceedings. *See Willis*, 844 F.3d at 164 (holding indictment adequately alleged a quid pro quo based on similar language); *Menendez*, 132 F. Supp. 3d at 643 (finding indictment "clearly allege[d] an explicit *quid pro quo*" by stating defendant made campaign contributions "in return for" defendant-senator's advocacy on behalf

4

BY THE COURT:

/s/   Juan R. Sánchez
Juan R. Sánchez, C.J.

---

of the defendant in his contract dispute).  Similarly, the favorable treatment alleged—the awarding of City contracts—is sufficient to satisfy the "official act" requirement for the purpose of Spencer's Motion to Dismiss Counts Two through Nine.

Whether factual allegations in the Indictment meet the definition of an explicit quid pro quo under *McCormick* or an "official act" under *McDonnell* are questions of fact that remain to be resolved after the Government has presented evidence at trial.  *See McDonnell*, 136 S. Ct. at 2371 ("It is up to the jury, under the facts of the case, to determine whether the public official agreed to perform an 'official act' . . . [and] the jury may consider a broad range of pertinent evidence, including the nature of the transactions, to answer that question.").  The allegations of the Indictment are legally sufficient to state an offense, and to the extent Spencer challenges the sufficiency of the evidence presented to the grand jury, such a challenge is premature at this stage.  *See Williams*, 504 U.S. at 54–55 (noting that because courts must "abstain from reviewing the evidentiary support for the grand jury's judgment," they similarly cannot "scrutiniz[e] the sufficiency of the prosecutor's presentation"); *United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011) ("A ruling on a motion to dismiss is not . . . a permissible vehicle for addressing the sufficiency of the government's evidence." (internal quotation marks and citation omitted)).  As the Indictment returned against Spencer sets forth the elements of the charges and sufficiently apprises him of what he must defend against, any challenges to the sufficiency of the Government's evidence must await trial.